USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 2/13/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FIRST CAPITAL REAL ESTATE
INVESTMENTS, L.L.C.,

        Petitioner,

- against -

SDDCO BROKERAGE ADVISORS, LLC,

        Respondent.

18cv2013 (JGK)

OPINION & ORDER

JOHN G. KOELTL, District Judge:

The petitioner, First Capital Real Estate Investments, LLC ("First Capital"), seeks to vacate arbitration award issued by the Financial Industry Regulatory Authority, Inc. ("FINRA") in favor of respondent SDDCO Brokerage Advisors, LLC ("SDDCO"). SDDCO cross petitions to confirm the award and seeks prejudgment interest and attorneys' fees.

I.

The underlying arbitration[1] was a FINRA arbitration pursuant to a placement agreement (the "Placement Agreement") in which First Capital agreed to pay SDDCO a 10 percent fee if SDDCO was able to obtain financing for First Capital or a commonly controlled company of First Capital. (SDDCO Ex. 2.) SDDCO obtained a $2 million loan for First Capital, but First Capital

---

[1] The underlying arbitration was captioned SDDCO Brokerage Advisors, LLC v. First Capital Real Estate Investments, LLC, and was assigned FINRA Case No.: 17-01140.

failed to pay the $200,000 fee. (SDDCO Ex. 1.) The Placement Agreement stated that "[a]ny controversy or claim arising out of or relating to this Placement Agreement shall be resolved by arbitration in accordance with the provisions of the FINRA Code of Arbitration Procedure." (SDDCO Ex. 2 ¶ 12(d).)

SDDCO initiated an arbitration proceeding against First Capital on May 3, 2017. (SDDCO Ex. 1.) By letter date June 26, 2017, FINRA stated that the "case is proceeding according to the three arbitrator intra-industry case provisions for disputes between associated persons or between or among firms and associated persons as described in [FINRA] Rule 13403(b)(2)." (Pet. Vacate Ex. C.) However, during the arbitration the parties repeatedly referenced the FINRA rules for customer disputes -- rather than intra-industry disputes -- in their correspondence with the arbitration panel. Moreover, the award issued by the panel acknowledged that First Capital was not a FINRA member. (SDDCO Exs. 2, 13, 14, 16, 18.)

The Placement Agreement called for any dispute to be decided by FINRA arbitration but did not specify how arbitrators would be selected. (SDDCO Ex. 2.) For disputes involving more than $100,000, FINRA's rules for customer disputes and intra-industry disputes both call for an arbitration panel comprised of two public arbitrators and one non-public arbitrator. FINRA Rules 12401(c), 12403, 13401(c), 13403(b)(2).

2

By letter dated June 26, 2017, FINRA provided a list of arbitrators from whom the parties could select the arbitrators for their case. (Pet. Vacate Ex. C.) An initial prehearing conference took place telephonically between First Capital, SDDCO, and all three members of the panel on August 16, 2017, and later that same day FINRA sent a letter to the parties confirming that "[t]he parties [had] accepted the panel's composition." (SDDCO Ex. 11.) First Capital now claims that Sandra D. Parker, one of the public arbitrators, should have been disqualified from serving on the panel. (SDDCO Ex. 11.) The parties had previously received an Arbitration Disclosure Report ("ADR") for Ms. Parker on June 26, 2017. (SDDCO Ex. 5.) Ms. Parker's disclosure report noted that she had previously represented a claimant against Morgan Stanley & Co. LLC in a 2015 employment matter and that as part of her legal practice she has defended clients before arbitration panels. (SDDCO Ex. 5.) Her disclosure report also stated that she was previously employed by Metropolitan Life Insurance Company. (SDDCO Ex. 5.) Ms. Parker submitted an oath of arbitration that stated she would keep facts of the arbitration confidential and that she was not disqualified from being a FINRA arbitrator. (SDDCO Ex. 12.)

In late November 2017, the panel issued a discovery order requiring First Capital to produce various documents to SDDCO by

3

December 15, 2017. (SDDCO Ex. 13.) First Capital failed to comply with the Order and SDDCO filed a request for sanctions. (SDDCO Ex. 13.) The arbitration panel granted SDDCO's request and required First Capital to pay $3,500 as a sanction. (SDDCO Ex. 1.)

On February 2, 2018, the arbitration panel rendered an award against First Capital in the amount of $200,000 plus interest at the rate of nine percent until the award is paid in full, $86,859 in attorney fees, $13,275 in forum fees, $1,000 in filing fees, and memorialized the earlier imposed sanction which had been paid. (SDDCO Ex. 1.)

On March 21, 2018, after the petition in this Court had already been filed, FINRA sent a letter to the parties advising that it had determined that Ms. Parker was not qualified to be a public arbitrator because she had previously worked for Metropolitan Life -- a broker dealer -- and that pursuant to FINRA rules that were amended in 2015, Ms. Parker's previous representation of Metropolitan Life disqualified Ms. Parker from being a public arbitrator. (Dkt. No. 27-2.)

## II.

The task for a party seeking to vacate an arbitration award is a formidable one. "To avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation, arbitral awards are subject to

4

very limited review." Zurich Am. Ins. Co. v. Team Tankers A.S., 811 F.3d 584, 588 (2d Cir. 2016) (quoting Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993)) (alteration accepted) (quotation marks omitted). Courts are "not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 934 (2d Cir. 1986); see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010) ("It is not enough . . . to show that the panel committed an error -- or even a serious error. It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable." (citations and quotation marks omitted)).

Section 10(a) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, "sets forth specific grounds for vacating" an arbitration award: "corruption, fraud, or undue means in procurement of the award, evident partiality or corruption in the arbitrators, specified misconduct on the arbitrators' part, or where the arbitrators exceeded their powers." Jock v. Sterling Jewelers Inc., 646 F.3d 113, 121 (2d Cir. 2011) (quotation marks omitted). There is also a "judicially-created ground, namely that an arbitral decision may be vacated when an

5

arbitrator has exhibited a manifest disregard of law." Id. (quotation marks omitted).

**III.**

First Capital seeks vacatur on three bases: (1) that the entire arbitration proceedings were conducted in accordance with the rules for intra-industry disputes when they should have been conducted pursuant to the rules for customer disputes, (First Capital Mem. at ¶¶ 33-40); (2) that Ms. Parker was not qualified to be a public arbitrator because her law firm's website states that she previously handled FINRA arbitrations, (id. ¶¶ 56-69); and (3) that the panel was improperly formed and, thus, not qualified to sanction First Capital for failing to comply with a discovery order, (id. at ¶ 70).

**A.**

First Capital argues that the arbitration was improperly conducted under FINRA's intra-industry rules rather than the customer-related rules. SDDCO agrees that this was not an intra-industry dispute but asserts that the rules for customer-related disputes were in fact applied in the arbitration.

First Capital's argument is without merit. While the initial letter from FINRA indicated that the arbitration was being conducted under the intra-industry rules, this was merely a form letter. Subsequent correspondence between the parties and the panel's arbitration award show that the arbitration

6

proceeded pursuant to FINRA's customer-related rules. First Capital has not presented any evidence that FINRA rules for intra-industry disputes were used during any part of the arbitration.

Moreover, First Capital failed to raise any objection during the arbitration to the rules being applied. First Capital cannot now, for the first time, raise such an objection. That objection has been waived and cannot be raised before this Court. Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 540 (2d Cir. 2016) ("[A] party cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first." (quotation marks omitted)); Rai v. Barclays Capital Inc., 739 F. Supp. 2d 364, 374 (S.D.N.Y. 2010) ("[The petitioner] had the opportunity to object, but knowingly and voluntarily consented to continuing with the arbitration. [He] cannot remain silent about the perceived partiality, and then later object when the Panel reaches a decision he dislikes. His silence constitutes a waiver of his right to object on those grounds."), aff'd, 456 F. App'x 8 (2d Cir. 2011).

First Capital has also failed to show any meaningful difference between FINRA's intra-industry and customer-related

7

rules. The rules for both types of arbitration required the same method of choosing arbitrators and require that there be two public arbitrators and one non-public arbitrator on the panel. FINRA Rules 12401(c), 12403, 13401(c), 13403(b)(2). Therefore, First Capital has not demonstrated how it was harmed by the alleged application of the rules for intra-industry disputes. See Avis Rent A Car Sys. v. Garage Emps. Union, Local 272, 791 F.2d 22, 25 (2d Cir. 1986) ("[A] trivial departure from the contractual method of choosing an arbitrator might not bar enforcement of an award . . . .").

Therefore, First Capital's argument that the arbitration was conducted under FINRA's intra-industry rules rather than the customer-related rules does not provide a basis to vacate the arbitration award.

**B.**

First Capital argues that Ms. Parker was not qualified to be one of the "public arbitrators" on the arbitration panel. Initially, First Capital argued that Ms. Parker was not qualified to be a public arbitrator because her law firm website states that she represents clients in FINRA arbitrations. In the course of proceeding before this Court, FINRA sent a letter to the parties advising that it had determined that Ms. Parker was not qualified to be a public arbitrator because she had previously worked for Metropolitan Life -- a broker dealer --

8

and that this disqualified Ms. Parker from being a public arbitrator.

Ms. Parker's work history does not require vacatur of the arbitration award in this case. Ms. Parker's disclosure report states that she previously represented clients in FINRA arbitrations and that she was previously employed by Metropolitan Life. First Capital could have moved to disqualify Ms. Parker before the start of the arbitration. It did not do so, nor did it object during the arbitration. Thus, the objection has been waived. Nat'l Football League Mgmt. Council, 820 F.3d at 539; Rai, 739 F. Supp. 2d at 374; Lucent Techs. Inc. v. Tatung Co., 379 F.3d 24, 28 (2d Cir. 2004) (stressing that the Second Circuit has "declined to vacate awards because of undisclosed relationships where the complaining party should have known of the relationship . . . or could have learned of the relationship just as easily before or during the arbitration rather than after it lost its case" (citations and internal quotations omitted)).[2]

---

[2] At oral argument, the petitioner cited Malone v. Credit Suisse Securities (USA), LLC, No. 18cv6872, Dkt. No. 22 (S.D.N.Y. Feb. 2, 2019) as support for his position. In Malone the petitioner argued that the arbitration award should be vacated because, as in this case, Ms. Parker sat on the arbitration panel and was initially misclassified as a public arbitrator. Id. at 4-8. The respondent in that case argued that the petitioner knew or should have known that Ms. Parker was misclassified because FINRA's original disclosure reports disclosed that Ms. Parker previously worked for Metropolitan Life. Id. at 6 n.4. The court stated that "[w]hile [the respondent] might be correct that a party familiar with the industry, represented by experienced counsel, arguably should have known that an entity like Metropolitan Life would be registered as a broker-dealer

9

Moreover, the arbitration panel's decision was unanimous. First Capital does not object to the selection of the two arbitrators other than Ms. Parker. First Capital has provided no evidence that Ms. Parker improperly influenced or prejudiced the other arbitrators in favor of SDDCO. Because the three-person panel unanimously arrived at their decision, Ms. Parker's presence on the panel, even if it had been improper, did not prejudice First Capital and does not require vacatur of the arbitration award.

### C.

First Capital argues that sanctions should not have been imposed by the arbitration panel for its discovery violation. First Capital asserts that SDDCO violated FINRA Rules by failing to attempt to resolve the discovery dispute with First Capital before bringing its motion for sanctions.

---

and therefore that [Ms.] Parker had been misclassified, the record in this case does not support such a conclusion." Id. In that case, FINRA notified the petitioner's counsel that Ms. Parker had been misclassified before the arbitration concluded. Id. at 6. Therefore, the court held that the petitioner had waived the right to object. Id. at 7. In this case, FINRA did not notify the parties that Ms. Parker had been misclassified until the arbitration had concluded. Therefore, the petitioner argues that he could not have known that Ms. Parker was misclassified during the arbitration. However, Ms. Parker's initial disclosure stated that she previously represented Metropolitan Life. This was sufficient notice such that the petitioner could have objected during the arbitration. See Nat'l Football League Mgmt. Council, 820 F.3d at 539; Rai, 739 F. Supp. 2d at 374; Lucent Techs. Inc., 379 F.3d at 28. The petitioner should not have waited until it got an unfavorable result in the arbitration to raise objections to an arbitrator which could, with reasonable diligence, have been raised during the arbitration.

First Capital's argument is disingenuous. SDDCO brought a discovery motion after First Capital failed to produce certain documents. The arbitration panel then ordered First Capital to produce the documents. Only after First Capital failed to produce the documents for a second time did SDDCO file a motion for sanctions. This was certainly enough for the arbitration panel to find the FINRA rule was satisfied.

## IV.

SDDCO cross moves for confirmation of the arbitration award. SDDCO also seeks attorneys' fees and prejudgment interest. For the reasons explained below, SDDCO's motions are **granted**.

### A.

The FAA provides that "any party to [an] arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court . . . ." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quotation marks omitted). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed 'if a ground for the arbitrator's

11

decision can be inferred from the facts of the case.'" Id. (quoting Barbier v. Shearson Lehman Hutton, Inc., 948 F.2d 117, 121 (2d Cir. 1991)).

"Only a 'barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." Id. (quoting Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union, 954 F.2d 794, 797 (2d Cir. 1992)). "Due to the parallel natures of a motion to vacate and a motion to confirm an arbitration award, denying the former implies granting the latter." L'Objet, LLC v. Samy D. Ltd., No. 11cv3856, 2011 WL 4528297, at *3 (S.D.N.Y. Sept. 29, 2011); see also Sanluis Dev., L.L.C. v. CCP Sanluis, L.L.C., 556 F. Supp. 2d 329, 333 (S.D.N.Y. 2008) (courts "treat a party's opposition to a motion to vacate as a request to confirm the award").

As explained above, First Capital has not provided any grounds to vacate the arbitration award in this case. No valid reason has been given to vacate, modify, or correct the arbitration award. Therefore, the award is **confirmed.**

### B.

SDDCO's request for attorneys' fees and prejudgment interest is **granted.**

SDDCO requests attorneys' fees in the amount of $24,200 for forty-four hours of time spent working on this case. (SDDCO Ex. 21.) All services were rendered by Kevin Koplin, a partner who

was admitted to practice in 1995. (Id.) Mr. Koplin states that his fee is $550 per hour.

Under the terms of the Placement Agreement giving rise to the underlying arbitration, the parties agreed to pay for any expenses in enforcing the terms of the agreement, including attorneys' fees. The amount of time billed in this case[3] and the hourly billing rates are reasonable. See Rubenstein v. Advanced Equities, Inc., No. 13cv1502, 2015 WL 585561, at *6 (S.D.N.Y. Feb. 10, 2015) (approving an attorneys' fee award of $525 per hour for partners who worked on an opposition to a motion to vacate an arbitration award); see also Sidley Holding Corp. v. Ruderman, No. 08cv2513, 2009 WL 6047187, at *26 (S.D.N.Y. Dec. 30, 2009) (noting that "fee awards within th[is] [D]istrict reflect hourly rates in the range of $450.00 to $600.00 for experienced partners"), report and recommendation adopted, 2010 WL 963416 (S.D.N.Y. Mar. 15, 2010). Therefore, SDDCO's request for $24,200 is reasonable and is **granted**.

### C.

SDDCO requests that prejudgment interest be awarded at a rate of nine percent per annum from February 6, 2018, the date of the award.

---

[3] Mr. Koplin does not appear to include the time spent drafting and filing SDDCO's reply papers as a part of his fee application. (Dkt. No. 27; see SDDCO Ex. 21.) He also has not sought fees for the time preparing for and participating in the hearing on these motions.

13

"The decision whether to grant prejudgment interest in arbitration confirmations is left to the discretion of the district court." SEIU v. Stone Park Assocs., LLC, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004). There is a presumption in favor of prejudgment interest. Waterside Ocean Navigation Co. v. Int'l Navigation Ltd., 737 F.2d 150, 154 (2d Cir. 1984). Prejudgment interest is appropriate where the agreement between the parties states that an arbitration decision is final and binding. See, e.g., Soft Drink & Brewery Workers Union Local 812, IBT v. Ali-Dana Bevs., No. 95cv8081, 1996 WL 420209, at *3 (S.D.N.Y. July 24, 1996). The "common practice" among courts within the Second Circuit is to grant interest at a rate of nine percent, the rate of prejudgment interest under New York State law. SEIU, 326 F. Supp. 2d at 550.

In light of the presumption in favor of awarding prejudgment interest and the fact that the Placement Agreement stated that any arbitration decision would be "final and not subject to judicial review," an award of prejudgment interest at a rate of nine percent per annum is warranted in this case. The arbitration award was entered in favor of SDDCO on February 6, 2018, in the amount of: $200,000 for compensatory damages plus prejudgment interest at a rate of nine percent per annum from September 13, 2016, until judgment is entered; $86,859 in attorneys' fees; $13,275 in forum fees; and $1,000 in filing

fees. Considering that the arbitrators already awarded prejudgment interest on the compensatory award, SDDCO is entitled to prejudgment interest on the $200,000 compensatory damages award from September 13, 2016, until judgment is entered in this case. SDDCO is entitled to prejudgment interest on the remaining $101,134 from February 6, 2018, until judgment is entered in this case.

## CONCLUSION

For the reasons explained above, First Capital's petition to vacate the arbitration award is **denied**. SDDCO's petition to confirm the arbitration award and for attorneys' fees and prejudgment interest is **granted**. SDDCO is entitled to:

- $200,000 plus prejudgment interest at the rate of nine percent calculated from September 13, 2016, until judgment is entered in this case;

- $101,134 plus prejudgment interest at the rate of nine percent calculated from February 6, 2018, until judgment is entered in this case; and

- Attorneys' fees in the amount of $24,200.

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The Clerk of Court is directed to enter judgment accordingly. The Clerk is also directed to close all open motions and to close this case.

**SO ORDERED.**

**Dated:** New York, New York
February 13, 2019

*/s/ John G. Koeltl*
John G. Koeltl
**United States District Judge**